UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 3:17-cr-00107RLM |
| ) | |
| DARIN DEVON HURD ) | |

OPINION AND ORDER

Darin Hurd was indicted for illegal possession of a firearm in furtherance of a drug trafficking crime (count 1), 18 U.S.C. § 924(c)(1)(A), one count of possession with intent to distribute heroin, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and one count of illegal possession of a firearm after a felony conviction, 18 U.S.C. § 922(g)(1). Mr. Hurd pleaded guilty to counts 1 and 2. The court imposed a total combined sentence of 248 months' imprisonment. Mr. Hurd is now before the court requesting an evidentiary hearing pursuant to 28 U.S.C. § 2255.

The rules governing petitions filed under 28 U.S.C. § 2255 provide that once a motion is filed:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

1

*Facts and Law Generally Pertinent to the Petition*

Mr. Hurd was a heroin dealer. Mr. Hurd's girlfriend died as a result of an overdose on heroin that Mr. Hurd kept at their home, either as sales inventory or for personal use. Their three-year-old son was found to have heroin in his system, too. The focus of Mr. Hurd's petition – particularly in his reply – seems to be on his attorneys' alleged failure to thoroughly research and advise Mr. Hurd about the possibility of a greater sentence because of her death.

Mr. Hurd's arguments rest on twin pillars of a postmortem examination final report with respect to his girlfriend and a misunderstanding of an easily misunderstood field of law. The autopsy report concluded that the cause of his girlfriend's death was accidental opiate (heroin) toxicity, but that her blood also contained other narcotic substances. [Doc. No. 73-1]. Mr. Hurd relies on Burrage v. United States, 571 U.S. 204, 218-219 (2014), which held that for a defendant to be convicted of causing another's death through distribution of a controlled substance, the distributed substance had to be the "but for" cause of the victim's death. The presence of other drugs in the victim's blood precluded such a finding in Burrage. Mr. Hurd believes that the presence of other narcotics in his girlfriend's blood means he should have gotten a shorter sentence.

21 U.S.C. § 841(b)(1)(C) increases the penalty for a crime involving a measurable amount of heroin from a maximum of 20 years to a minimum of 20 and a maximum of life "if death or serious bodily injury results from the use of such substance …." That was the sentence under consideration in Burrage. But

2

Mr. Hurd wasn't charged under that provision; the three-count indictment said nothing of causing death. Peter Boyles (Mr. Hurd's first attorney) and AUSA Molly Donnelly discussed the possibility of a superseding indictment that would charge possession with intent to distribute resulting in death. But Mr. Boyles discussed the postmortem examination final report with Ms. Donnelly and told her how difficult it would be to prove, beyond a reasonable doubt, that Mr. Hurd's possession with intent to distribute resulted in his girlfriend's death. No superseding indictment was returned.

But there is a difference between a criminal charge that adds a sentencing enhancement that must be proved beyond a reasonable doubt, and a decision to impose a higher sentence within the statutory maximum. The latter is what eventually happened to Mr. Hurd after he pleaded guilty to possession with intent to distribute heroin and possession of a firearm in furtherance of a drug trafficking offense. U.S.S.G. § 5K2.1 approves a resulting death – from any crime, not just a controlled substance offense – as a ground for an above-guideline sentence. The government made clear early on that it might seek an above-range sentence pursuant to that sentencing guideline: paragraph 9(e) of Mr. Hurd's plea agreement said, "I understand that the United States may be seeking a departure from the U.S. Sentencing Guidelines pursuant to U.S.S.G. § 5K2.1". [Doc. No. 23, at 5].

The topic arose at Mr. Hurd's change of plea proceeding, as well. After summarizing other provisions of the agreement, AUSA Donnelly said:

3

> Additionally, the government would just note that the plea agreement, while these two points are not agreements between the parties, it does advise Mr. Hurd that the government may be seeking an upward departure related to the death of B.W., which would be relevant for sentencing purposes; and due to his prior convictions, he may be subject to enhanced penalties.
> THE COURT: Thank you, ma'am.
> \*\*\*
> THE COURT: Mr. Hurd, is that how you understood it?
> THE DEFENDANT: Yes, sir.

[Doc. No. 57, at 6-7].

The government sought an upward variance under § 5K2.1 at sentencing, and Mr. Hurd's lawyers argued against it. The government's argument persuaded the court, which sentenced Mr. Hurd at about six offense levels about what the guidelines recommended.

Mr. Boyles tried unsuccessfully to persuade the government not to file an information for a penalty enhancement under 21 U.S.C. § 851, which increased the maximum penalty for Mr. Hurd's heroin offense from 20 years to 30 years. The government filed that notice the same day it filed the signed plea agreement. The court explained the possible increase in penalties to Mr. Hurd at the change of plea hearing, and Mr. Hurd said he understood. [Doc. No. 57, at 8-9]. The plea agreement that Mr. Hurd signed also explained the potential impact of the § 851 notice:

> also understand that generally, the maximum possible penalty that may be imposed upon me for my conviction of the offense of possession with intent to distribute heroin as charged in Count Two of the Indictment is a term of imprisonment, if any, not to exceed twenty (20) years, [plus fine, special assessment, and supervised release]. However, I also understand that because of my criminal history and the government's previously filed Notice, I may be subject to enhanced penalties pursuant to 21 U.S.C. §§

4

> 841(b)(1)(C) and 851. I understand that this means that, if I qualify under these sections, the maximum possible penalty that may be imposed upon me for my conviction of Count Two is a term of imprisonment, if any, not to exceed thirty (30) years, [plus fine, special assessment, and supervised release].

[Doc. No. 23, at 4].

The day before the parties' sentencing memoranda were due, Mr. Boyles learned that another attorney in his office was representing one of Mr. Hurd's cellmates. Mr. Hurd had assisted the government in an investigation related to this cellmate's attempted escape. Once Mr. Boyles found out about the potential conflict, he discussed it with Mr. Hurd and told him that he might have to withdraw based on the potential conflict. Because the sentencing memorandum was due that day and Mr. Boyles was still investigating the nature of the conflict, Mr. Boyles reviewed the sentencing memorandum with Mr. Hurd and filed it with Mr. Hurd's approval. A few days later, after discussing the situation with the district's chief federal defender, Mr. Boyles moved to withdraw. The court granted Mr. Boyles's motion and appointed Mark Lenyo, who represented Mr. Hurd throughout the rest of the proceedings in the district court.

*The Appeal Waiver*

Mr. Hurd's § 2255 petition includes seven grounds that Mr. Hurd's attorneys, Mr. Peter Boyles and Mr. Mark Lenyo, provided ineffective assistance of counsel. To succeed on an ineffective assistance claim, "a defendant must show (1) that counsel's performance fell below an objective standard of

5

reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." Bethel v. United States, 458 F.3d 711, 716 (7th Cir. 2006) (citing Hill v. Lockhart, 474 U.S. 52, 57-59 (1985)).

Mr. Hurd's plea agreement contained an appeal waiver. The government says this petition should be dismissed on the strength of that waiver. As a general rule, appeal waivers are binding on a defendant except insofar as the defendant claims ineffective assistance of counsel relating to the plea agreement in which the waiver is found. See Gaylord v. United States, 829 F.3d 500, 505 (7th Cir. 2016); cf. Long v. United States, 847 F.3d 916, 920 (7th Cir. 2017). Only of one of Mr. Hurd's seven claims of ineffective assistance of counsel relates to the plea agreement. But Mr. Hurd didn't waive as much as the law would allow. In his plea agreement, Mr. Hurd waived any appeal or collateral attack "on any ground other than a claim of ineffective assistance of counsel …." [Doc. No. 23, at 5]. All of Mr. Hurd grounds for relief under § 2255 assert ineffective assistance of counsel, so the court can't agree with the government that his petition must be dismissed.

But the issue of plea agreement provides a logical place to start, although Mr. Hurd didn't list it first among his claims, because all other claims address events at or near the time of sentencing. So, the court starts there.

*Ineffective Assistance of Counsel Related to Acceptance of Plea Agreement*

6

Mr. Hurd argues in Ground Two of his petition, that Mr. Boyles, while operating under a conflict of interest, advised Mr. Hurd to sign a plea agreement that left the government free to advocate for a U.S.S.G. § 5K2.1 enhancement. Mr. Hurd also claims that Mr. Boyles was in effective because he failed to be aware of the issues and case law surrounding the potential § 5K2.1 enhancement and let Mr. Hurd agree to a plea agreement that allowed the government to seek an upward variance at sentencing.

To the extent that Mr. Hurd implies that Mr. Boyles's conflict of interest caused Mr. Boyles to provide ineffective assistance of counsel, he hasn't met his burden to show ineffective assistance of counsel. Mr. Hurd alleges nothing that would suggest that Mr. Boyles had any conflict of interest when negotiating the plea agreement. Mr. Hurd wasn't assisting in the investigation of his cellmate's escape at that point. Nor does Mr. Hurd present any allegations or evidence that whatever Mr. Boyles's conflict might be thought to be caused any prejudice to Mr. Hurd.

Mr. Hurd argues that because the post-mortem forensic pathology reports didn't support the conclusion that heroin was the "but-for" cause of death and that the decedent had multiple drugs in her system, Mr. Boyles should have better communicated with Mr. Hurd about the results of the pathology reports, his conversations with the government regarding the difficulty of proving that Mr. Hurd caused a death, and the "but-for" test causation test. Mr. Boyles conduct, Mr. Hurd argues, prevented Mr. Hurd from making an informed

7

decision about whether to agree to a plea agreement or go to trial. As Mr. Hurd sees it, he told Mr. Boyles that if he was going to receive 20 years or more, he wanted to go to trial and that he signed the plea because Mr. Boyles told him that the government would not be charging him with any enhancement. [Doc. No. 85, at ¶¶ 8-13].

It seems clear from the argument that Mr. Hurd is confusing the enhanced penalty established by 21 U.S.C. § 841(b)(1)(C) and the potential for a sentence above the advisory sentencing guideline range on the strength of U.S.S.G. § 5K2.1. Mr. Boyles was right when he told Mr. Hurd that the government wouldn't be charging him with any enhancement based on Mr. Hurd's girlfriend's death.

If Mr. Boyles did anything that fell below what the Sixth Amendment demands of a criminal defense attorney, Mr. Hurd wasn't prejudiced by it, because he received all the information necessary to make a knowing and voluntary plea anyway. First, the "but for" causation test that Mr. Hurd refers to is the statutory requirement under 21 U.S.C. § 841(b)(1)(C) of a 20-year minimum sentence if death or serious bodily injury results from the use of such substance. The § 5K2.1 guideline and the 841(a)(1) death resulting statute require different findings and carry different burdens of proof. Mr. Hurd assumes that if one requires proof of "but-for" causation, the other must, as well, but cites no law to that effect. The advisory notes to the sentencing guideline contain no such requirement.

Second, at the plea hearing, the government identified the elements of the charged offenses which it would have to prove at trial, [Doc. No. 57, pp. 16-17]; the court outlined the maximum penalties for each charge under the plea agreement, [Doc. No. 57, p. 9]; and the court explained that sentencing recommendations in the agreement were non-binding, [Doc. No. 57, p. 11]. The court also explained to Mr. Hurd about the 5K2.1 enhancement and the government's agreement not to file a charge under 21 U.S.C. § 841(b)(1)(C):

> THE COURT: And that leads us to this death of the person that they're calling "B.W." on September 5th of last year. As I understand it, as part of your plea agreement, the government has agreed not to file any additional heroin distribution charges against you based on that person's death. Is that how you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: But, as I understand it, from your plea agreement, I can -- and, in fact, might have to -- take into account other events. Sometimes the law requires the judge to do it. Sometimes the law says you can. It's what's called "relevant conduct." And, as I understand it, you and the government realize that I might take that into account in deciding your sentence in this case, not a separate case based on B.W.'s death, but in this case, and the government may ask me to do that and impose a sentence higher than what the guidelines otherwise would recommend. Is that how you understand their promise and also what they might do?
>
> THE DEFENDANT: Yes, sir.

[Doc. No. 57, p. 13].

Mr. Hurd also told the court at the change of plea hearing that he understood that no predictions should be trusted and that any sentence up to the maximum was still possible:

9

> So the bottom line is, I can impose any reasonable sentence, any sentence that's reasonable in this case, but I'll start looking for a reasonable sentence where the guidelines tell me to. Is that how you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Now, have you and Mr. Boyles looked over the guidelines to try and get an idea as to how they might play out in your case?
> THE DEFENDANT: Yes, sir.
> THE COURT: I'm sure Ms. Donnelly has done the same thing from the government's standpoint. What the attorneys know, and I want to be sure that you understand, is that nobody can say for sure how I'm going to answer these questions. That includes me because I haven't tried to do it yet. I can't tell you how I will answer the questions. So my answers might be exactly what someone expects them to be or they might be different from what someone expects, maybe very different, but nobody has the right to withdraw from the plea agreement just because my answers weren't what they thought they would be.
> Is that how you understand that?
> THE DEFENDANT: Yes, sir.

[Doc. 57, at 10-11].

And he told the court under oath that apart from the statutory sentencing ranges and the guidelines, nobody had predicted anything:

> THE COURT: Other than what we have just talked about, sir, has anybody made any other promises or predictions to you as to what sentence you are going to get in this case?
> THE DEFENDANT: No, sir.

[Doc. 57, at 14].

Mr. Hurd's statements at the change of plea hearing were under oath and so are afforded the presumption that his answers were truthful and that he understood the consequences of changing his plea to guilty. United States v. Gonzalez, 765 F.3d 732, 741 (7th Cir. 2014).

10

Even if Mr. Boyles didn't explain all the ins and outs of variances and statutory enhancements, or didn't sufficiently warn Mr. Hurd of possible changes from the advisory guideline sentence, there was no prejudice to Mr. Hurd's case. He received and understood this information at the plea hearing and still chose to plead guilty.

As a result, Mr. Hurd hasn't alleged facts to support his claim that his counsel performed deficiently by failing to provide him with the post-mortem and forensic pathology reports and not informing him the application of the "death results" enhancement to his sentence during the plea negotiation.

*Ineffective Assistance of Counsel Related to the Filing of His Sentencing Memorandum*

In Ground One of his petition for relief, Mr. Hurd argues that Mr. Boyles provided ineffective assistance of counsel when he filed a sentencing memorandum despite being aware that there was a conflict of interest with Mr. Hurd's case. The government argues in response that although a conflict may have existed, Mr. Hurd can't demonstrate that Mr. Boyles's conflict adversely affected his performance in the substance of the sentencing memorandum.

The existence of a conflict of interest isn't dispositive of the existence of an ineffective assistance of counsel claim. To prevail on an ineffective assistance of counsel claim, a defendant must "establish that the conflict of interest adversely affected his counsel's performance." Mickens v. Taylor, 535 U.S. 162, 174 (2002).

11

Mr. Hurd only claims that the fact that Mr. Boyles had a conflict was itself the basis for the claim of ineffective assistance of counsel. He doesn't appear to dispute the part of Mr. Boyles's affidavit that she he discussed the sentencing memorandum with Mr. Hurd, that the sentencing memorandum objected to the § 5K2.1 sentencing enhancement, or that sentencing memorandum argued for a sentence below the guideline range. [Doc. No. 38]. Mr. Boyles also attached photographs and letters of support in support of a sentence below the guideline range. Mr. Hurd hasn't claimed in his petition or in his reply brief that Mr. Boyles's alleged conflict of interest adversely affected Mr. Boyles' performance.

At no point until now did Mr. Hurd indicate that he was dissatisfied or concerned about Mr. Boyles having drafted and filed the sentencing memorandum. During the sentencing hearing, Mr. Hurd testified that he was satisfied with Mr. Boyles's representation, despite having knowledge of the potential conflict at the time. Mr. Hurd allegations, even if true, wouldn't establish that Mr. Boyles's conflict adversely affected his performance. Mr. Hurd can't succeed on this ground.

*Ineffective Assistance of Counsel Related to Requesting to Withdraw Plea Agreement*

Ground Three in Mr. Hurd's petition is that Mr. Lenyo failed to withdraw Mr. Hurd's plea agreement during a pre-sentence meeting despite Mr. Hurd's request to do so.

12

The evidence that Mr. Hurd told Mr. Lenyo to file a motion to withdraw his guilty plea is most generously described as shaky. Mr. Lenyo says he and Mr. Hurd discussed Mr. Hurd's relevant background history, including his past criminal offenses. [Doc. No. 73-3, at ¶ 8]. Mr. Lenyo also says that he reviewed the presentence report with Mr. Hurd, the sentencing guidelines, and his experience with sentences over the guideline recommendation. [Id. at ¶ 9]. Mr. Lenyo says Mr. Hurd never told him to withdraw his guilty plea. [Id. at ¶ 10]. Mr. Hurd affirms that Mr. Lenyo and he discussed dissatisfaction with the plea agreement and didn't feel like he gained anything by signing it. Mr. Hurd also says, under oath, that he told Mr. Lenyo to "pull" the plea. [Doc. No. 85, at ¶ 17].

Mr. Hurd affirmed his satisfaction with Mr. Lenyo's representation at the beginning of the sentencing hearing. The court asked Mr. Hurd if he was satisfied "with the job Mr. Lenyo did for you," and Mr. Hurd responded "yes". [Doc. No. 58, pp. 3-4]. Mr. Lenyo's affidavit, Mr. Hurd's affidavit, and Mr. Hurd's testimony at the sentencing hearing contain minimal evidence that Mr. Hurd requested Mr. Lenyo to withdraw the plea agreement and Mr. Lenyo failed to do so.

Even if he requested that the plea agreement be withdrawn, Mr. Hurd cannot establish prejudice. Mr. Hurd affirms that he was concerned that Mr. Lenyo didn't understand the plea agreement, and that he wanted Mr. Lenyo to get more familiar with his case. [Doc. No. 85, at ¶ 17]. But Mr. Hurd suggests no reason for the court to allow him to withdraw his plea; relief such as that requires

13

a fair and just reason for requesting withdrawal. *See, e.g.*, Fed. R. Crim. Pro. 11(d)(2); United States v. Cieslowski, 410 F.3d 353, 360 (7th Cir. 2005).

Mr. Hurd might well have wanted to "start again" after seeing the presentence report; he might well have believed that he got no benefit from the plea agreement. [Doc. No. 85, at ¶ 17]. Those aren't fair and just reasons for withdrawal of a guilty plea, *see* United States v. Merrill, 23 F.4th 766, 771 (7th Cir. 2022), especially when the plea agreement enlisted the government's support for a three-offense level reduction for acceptance of responsibility the government's agreement not to pursue a charge of distribution of heroin resulting in death in violation of Title 21 U.S.C. § 841(a)(1). Accordingly, Mr. Hurd can't get relief under Ground Three of his petition.

*Ineffective Assistance of Counsel Related to Promise of No Enhancement*

Ground Four in Mr. Hurd's petition is that Mr. Lenyo misadvised him that the § 5K2.1 enhancement wouldn't be applied to his case and that he would be sentenced between 144-168 months – the guideline range. Mr. Hurd says in his sworn reply that Mr. Lenyo and he discussed the guideline range and the § 5K2.1 enhancement. [Doc. 85, at ¶ 16]. Mr. Hurd also states that Mr. Lenyo told him not to worry about an upward variance under § 5K2.1 because he had only seen two people in his career get that variance. [Id.].

These circumstances don't rise to the level of ineffective assistance of counsel. Mr. Lenyo was only required to give a likely estimate of the sentence in

14

good faith, not to perfectly predict Mr. Miller's sentence. *See* Bethel v. United States, 458 F.3d at 717; *see also* Moore v. Bryant, 348 F.3d 238, 241 (7th Cir. 2003). Counsel's "mere inaccurate prediction of a sentence does not demonstrate the deficiency component of an ineffective assistance of counsel claim." United States v. Arvanitis, 902 F.2d 489, 494 (7th Cir. 1990). Telling Mr. Hurd not to worry about the § 5K2.1 enhancement based on his past cases isn't enough to demonstrate that Mr. Lenyo provided ineffective assistance of counsel. And as already noted, the court told Mr. Hurd at the change of plea hearing that nobody could predict accurately what the court would do at sentencing. [Doc. No. 57, at 10-11].

Mr. Hurd also argues in Ground Four of his petition that Mr. Lenyo provided ineffective assistance of counsel because he didn't object to the § 5K2.1 enhancement before and after sentencing. Mr. Hurd is simply wrong on that point. At the sentencing hearing, Mr. Lenyo advocated for a sentence below the guideline range, presented a witness on Mr. Hurd's behalf, and presented facts related to Mr. Hurd's background to support a sentence on the low end of the sentencing guidelines. [Doc. No. 57, at 20-25]. He also advocated for a sentence that didn't include an upward departure, because the facts supporting the § 5K2.1 enhancement were already considered in the guideline range. [Doc. No. 57, at 25]. Mr. Lenyo proffered extensive evidence against the government's argument that an upward departure is appropriate, such as evidence that Mr. Hurd called 911 when his partner was unresponsive, that his past drug charges

15

were when he was 18, and that he had previously tried to get himself and his partner drug treatment help. [Id. at 23-24]. Mr. Hurd hasn't established that Mr. Lenyo's performance was deficient.

The biggest problem with Ground Four of Mr. Hurd's petition is that Mr. Hurd can't explain how his conversation with Mr. Lenyo relating to his sentence or a failure to object to the § 5K2.1 enhancement affected anything other than Mr. Hurd's personal expectations. Mr. Hurd had already pleaded guilty, so Mr. Lenyo's advice did induce Mr. Hurd to plead guilty. [Doc. No. 57]. Assuming Mr. Lenyo made a poor prediction of the sentence – and Mr. Lenyo denies having made any prediction at all (Doc. No. 73-3), there was no prejudice to Mr. Hurd. Mr. Hurd can't succeed on Ground Four of his petition.

*Ineffective Assistance of Counsel Related to Mr. Lenyo's Failure to Investigate Mr. Boyles's Conflict and Failure to Investigate Proper Causation Standard of Mr. Hurd's Partner's Death*

Ground Five of Mr. Hurd's petition contains multiple arguments: 1) Mr. Lenyo failed to investigate Mr. Boyles's conflict of interest; 2) Mr. Lenyo failed to object to the sentencing memorandum; and 3) Mr. Lenyo failed to investigate Mr. Hurd's partner's cause of death, specifically whether a heroin overdose was the "but for" cause of death. [Doc. No. 59, at 14-15]. At this point in the discussion of this petition, those arguments can be resolved fairly quickly.

First, Mr. Hurd asserts that Mr. Lenyo should have investigated Mr. Boyles's conflict of interest. The government and Mr. Lenyo say he did, but

16

whether he did or didn't doesn't affect Mr. Hurd's condition or sentence. Mr. Hurd cites no authority for his assumption that a party's second attorney owes some sort of ethical duty to find out what happened to the first attorney. Mr. Lenyo had a sentencing hearing to prepare for, and that hearing would be unaffected by the reasons for Mr. Boyles's motion to withdraw.

In a similar argument, Mr. Hurd says Mr. Lenyo provided ineffective assistance of counsel when he failed to object to the sentencing memorandum. As the court already discussed, Mr. Hurd the record shows that the sentencing memorandum didn't prejudice Mr. Hurd. Mr. Boyles discussed the sentencing memorandum with Mr. Hurd, he objected to the government's requested above-range sentence under § 5K2.1, and he argued for a sentence below the guideline range. Mr. Boyles also attached photographs and letters of support in support of a sentence below the guideline range. Mr. Lenyo says he reviewed the sentencing memorandum and determined that the sentencing argument was sufficient. [Doc. No. 73-3]. Mr. Hurd's argument fails because there was no reason Mr. Lenyo should have objected to the sentencing memorandum Mr. Boyles wrote and filed.

Mr. Hurd's last argument in Ground Five is that Mr. Lenyo failed to investigate Mr. Hurd's partner's cause of death, specifically whether a heroin overdose was the "but for" cause of death. As before, Mr. Hurd appears to conflate the criminal charge that would require a showing beyond a reasonable doubt of "but for" causation with a ground for a sentence above the advisory

17

range that didn't need proof beyond a reasonable doubt or "but for" causation. Failure to argue <u>Burrage v. United</u> States, 571 U.S. 204, in a case in which it didn't apply didn't fall below the standard to which attorneys are held. In fact, the opposite might be true.

Ultimately, Mr. Hurd can't demonstrate how information, or lack of investigation into My. Boyles's conflict and Mr. Hurd's partner's death, and Mr. Lenyo's failure to object the sentencing memorandum affected his sentence, so Ground Five of his petition is dismissed.

*Ineffective Assistance of Counsel Related to Failure to Object to the 21 U.S.C. § 851 Enhancement*

Ground Six of Mr. Hurd's petition asserts that Mr. Boyles and Mr. Lenyo were ineffective for not objecting to the 21 U.S.C. § 851 recidivist enhancement because his prior convictions didn't qualify. Mr. Hurd raises an intricate argument for the proposition that he didn't have three qualifying drug offenses to trigger § 851. His argument appears to be mistaken, but it needn't be discussed because it doesn't matter: even if § 851 technically didn't apply, Mr. Hurd can't show prejudice from his attorneys' failure to object to the increase of the maximum penalty on the drug count from 20 years to 30 years. His sentence on that count didn't use any of ten years added by § 851.

To prevail on an ineffective assistance of counsel claim, Mr. Hurd "must show that his lawyer's deficiency was a 'decisive factor in [his] decision to plead guilty.'" <u>United States v.</u> <u>Martinez</u>, 169 F.3d 1049, 1053 (7th Cir. 1999) (quoting

United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996)). That showing requires more than the simple allegation that he would have insisted on going to trial. United States v. Cieslowski, 410 F.3d at 359. He must point objective evidence that a reasonable probability exists that he would have gone to trial. Id. Mr. Hurd doesn't contend that this difference would have caused him not to plea guilty.

The court sentenced Mr. Hurd to 188 months, or 15 years and 8 months, of imprisonment on the § 841(a)(1) count. If § 851 didn't apply, the court could have sentenced to another four years and four months; if it applied, the sentence was more than fourteen months below what was available to the court. Mr. Hurd can't show how he was prejudiced given that his sentence was below the maximum term of imprisonment even without the § 851 recidivist enhancement.

*Ineffective Assistance of Counsel Related to Failure to Appeal*

Lastly, in Ground Seven in the petition, Mr. Hurd argues that Mr. Lenyo provided ineffective assistance of counsel because Mr. Hurd asked Mr. Lenyo to file a notice of appeal and Mr. Lenyo didn't do so.

Both Mr. Lenyo and Mr. Hurd said that Mr. Hurd never asked Mr. Lenyo to file an appeal. Mr. Lenyo affirmed that "[a]t no time did Mr. Hurd ask me to file a notice of appeal or indicate any intention that he wished to appeal the sentence entered by the trial court." [Doc. No. 73-3, at ¶ 4]. Mr. Hurd affirmed that he didn't ask Mr. Lenyo to file an appeal, and only stated "we need to do something about this". [Doc. No. 85, at ¶18]. That's not enough to establish that

19

Mr. Hurd "expressly requested an appeal" as required. Garza v. Idaho, 139 S.Ct. 738,746 (2019). Mr. Hurd hasn't "overcome the heavy burden and presumption that his counsel was constitutionally effective" on this basis. Fountain v. United States, 211 F.3d 429, 435 (7th Cir. 2000).

*Conclusion*

The court needs no evidentiary hearing because Mr. Hurd's petition and submissions wouldn't entitle him to relief if true. The court SUMMARILY DISMISSES in Mr. Hurd's petition filed pursuant to 28 U.S.C. § 2255 [Doc. No. 59] and DENIES Mr. Hurd's motion for hearing [Doc. No. 86].

SO ORDERED.

ENTERED:   September 29, 2022

  /s/ Robert L. Miller, Jr.
Judge
United States District Court

cc:   D. Hurd